# Commonwealth v. Childs Dining Hall Company, Appellant.

*Taxation—Mercantile tax—Restaurant—License for each establishment—Foreign corporation—Corporation.*

A foreign corporation organized for the purpose of operating restaurants or eating houses, which has complied with all the laws of this state relative to foreign corporations doing business in the commonwealth, is required under the Act of April 10, 1849, P. L. 570, to take out a separate license for each separate establishment which it maintains in a city in this state.

The Act of April 10, 1849, P. L. 570, in so far as it relates to eating houses, restaurants and oyster sellers, was not repealed by the Act of May 2, 1899, P. L. 184, and is still in force.

Argued Oct. 11, 1906. Appeal, No. 91, Oct. T., 1906, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1906, No. 717, for plaintiff on case stated in suit of Commonwealth v. Childs Dining Hall Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Case stated to determine liability for a license tax.
The opinion of the Superior Court states the case.

*Error assigned* was the judgment in favor of the plaintiff.

*Roland T. Morris,* of *Duane, Morris, Heckscher & Roberts,* for appellant.—The clear intent of the act of 1849 is not only expressed so far as it relates to eating houses, in the opening words of section 20, but is more fully revealed in the subsequent provisions. Thus section 21 provides that all eating houses shall be divided into classes, and then follow these words: "for the privilege of keeping which the keepers shall each pay . . . . for the license, etc."

Surely no words could be clearer in expressing the intent of the act. It is the personal privilege of keeping eating houses for which he pays and, having paid in accordance with the terms of the act, there is absolutely no limitation on the number of eating houses which he may keep. Then follows section twenty-two classifying not the eating houses but the persons.

Throughout the whole act is expressed the intent of requiring the payment of one license by one who desires to operate a restaurant or restaurants.

*Ira Jewell Williams,* with him *Franklin L. Lyle* and *Hampton L. Carson,* attorney general, for appellee.—Mercantile License Acts of March 4, 1824, P. L. 32, April 7, 1830, P. L. 387, and May 4, 1841, P. L. 307, expressly provided for a separate license for each store and the provisions of those acts were extended to the eating house act.

The provisions of a statute may be adopted in another by general reference to such adopted act, and such adoption extends to all such provisions of the original statute as are ap-

plicable and appropriate to the adopting statute: Womelsdorf Alley, 8 Pa. C. C. Rep. 207; Lambertson v. Hogan, 2 Pa. 22; Rhines v. Clark, 51 Pa. 96; Mudge v. Williamsport, 78 Pa. 158; Union Canal Co. v. O'Brien, 4 Rawle, 358; Heinrich v. Venter, 1 Atl. Repr. 598; Kugler's App., 55 Pa. 123; Schwenke v. Union Depot, etc., Co., 4 Pac. Repr. 905; Stevenson v. Deal, 2 Pars. 212; Lumberman's Exchange v. Lutz, 2 Pa. Superior Ct. 91; Whitmore v. Muncy Creek Twp., 17 Pa. Superior Ct. 399; Washington County v. Berwick, 56 Pa. 466; Stewart v. Keemle, 4 S. & R. 72; Lancaster County v. Frey, 128 Pa. 593; Chinese Laborers, 13 Fed. Repr. 291; Philadelphia v. Ridge Ave. Pass. Ry. Co., 102 Pa. 190; Knowlton v. Moore, 178 U. S. 41 (20 Sup. Ct. Repr. 747).

The act of 1849 requires that eating houses shall be classed in seven classes for the privilege of keeping which the keepers shall pay. The contemporaneous construction of an act by the officers whose duty it is to enforce it, coupled with long acquiescence by the public, is entitled to weight. The " chain system " of restaurants has been in vogue in cities of this commonwealth and elsewhere for many years. Of these facts within the knowledge of every member of this court, the court will, of course, take judicial notice. It has been the uniform practice of the auditor general's department and of the mercantile appraisers through many administrations to require separate eating house licenses for each restaurant, no matter by whom owned, just the same as a separate license has been required from each dealer. No one has questioned this construction of the act until the present case. That this meaning was attached to the statute by the public officials whose duty it was to enforce it is entitled to great weight: U. S. v. Union Pacific Ry. Co., 148 U. S. 562 (13 Sup. Ct. Repr. 724); Commonwealth v. Mann, 168 Pa. 290.

OPINION BY PORTER, J., February 25, 1907:

The Childs Dining Hall Company, the appellant, is a corporation organized for the purpose of operating restaurants or eating houses, under the laws of the state of New Jersey. It has complied with all the laws of this state relative to foreign corporations doing business in the commonwealth. The defendant is now the keeper of seven restaurants in the city of

Philadelphia, and the question involved in this appeal is whether the corporation is required under the law of this state to take out one general license as a restaurant keeper, or seven licenses, one for the privilege of keeping each separate eating house.

The Act of April 10, 1849, P. L. 570, in so far as it relates to eating houses, restaurants and oyster cellars, was not repealed by the Act of May 2, 1899, P. L. 184, and is still in force: Commonwealth v. Givin, 21 Pa. Superior Ct. 401; and the liability of the defendant must be determined under the provisions of the first named statute. There can be no doubt that the provisions of the act of 1849, requiring the taking out of a license and the payment of a license fee for the privilege of keeping an eating house involved an exercise of the taxing powers of the commonwealth, and were not a mere police regulation; the whole scope and purpose of the statute was to raise revenue.

The statute enacted: " Section 20. That no person shall hereafter keep any beer house, eating house, restaurant or oyster cellar, . . . . wherein oysters, or other refreshments of any kind whatsoever are dressed, prepared or sold, without first applying for and obtaining a license from the county treasurer of the proper city or county, and for which the keepers thereof shall pay respectively the sum hereinafter provided." " Section 21. That the said . . . . eating houses, restaurants and oyster cellars shall be classed by the appraiser or appraisers of mercantile taxes for the city or county in which the same shall be located, in seven classes, for the privilege of keeping which the keepers shall each pay to the treasurer of the proper county, for the use of the commonwealth, . . . . for the license which the said treasurer of the proper counties are hereby required to grant." " Section 22. That every such person whose annual sales shall be esteemed and taken to amount to the sum of twenty thousand dollars and upwards, shall be classed in the first class, and pay the sum of two hundred dollars." Then follow like provisions as to the other classes, fixing the amount to be paid for the license, in the respective classes, based on the amount of estimated sales. " Section 27. Any person convicted of violating the provisions of the preceding sections shall be fined in a sum not less than

fifty, nor more than five hundred dollars for each offense, one-half to be paid to the county treasurer for the use of the commonwealth and the other half to the person or persons who shall prosecute such offender."

The 20th section makes it unlawful to keep any eating house or restaurant without a license, and the 27th section provides a penalty for any violation of this prohibition. The thing which·is here forbidden is not the dressing nor preparation nor sale.of oysters or other refreshments, but it is the keeping of an eating house or restaurant where these things are done, without a license. The keeping of the eating house or restaurant without a license is unlawful. The 21st and 22d sections provide the mode for ascertaining the amount which the keeper of an eating house or restaurant shall pay for the license to keep the same, fix the character of the license and designate the officer by whom the license shall be issued. The mercantile appraiser is required to classify " the eating houses, restaurants and oyster cellars " in seven classes, and the keeper of the eating house, restaurant or oyster cellar is required to pay, for the license to keep the same, a sum based on the classification made by the mercantile appraiser. The tax which the person obtaining the license shall be required to pay is fixed by the sum which the annual sales, of such persons, shall be esteemed and taken to amount to. The " annual sales " here referred to manifestly do not mean all sales made by the person who takes the license, whether in that particular business or some other in which he may be engaged, but, taken in connection with the context, they can only refer to the sales made through the eating house or restaurant for which the license is obtained. The classification of an eating house or restaurant is based upon the amount at which the mercantile appraiser estimates the sales of the keeper, as keeper of that eating house or restaurant, and the classification of the eating house or restaurant determines the amount which the keeper must pay for his license.

The amount which the eating house keeper pays for his license is not in the nature of an occupation tax, a fixed charge imposed on all who follow a certain calling; neither is it a general tax upon the particular business of buying and selling food-stuffs, whether prepared or unprepared for immediate use.

When the eating houses and restaurants have been properly classified, the licensee pays according to the classification. What does he pay for? The statute leaves us in no doubt upon this point. First comes the positive requirement that all eating houses and restaurants shall be classified, in seven classes, and then, in the same sentence, immediately follow the words, "for the privilege of keeping which the keepers shall each pay to the treasurer of the proper county, for the use of the commonwealth," and then follows the provision fixing the amount which each class shall pay. "The privilege of keeping," the eating house or restaurant so classified, is all that the keeper has paid for and the only right that he acquires by virtue of his license. The tax upon any given eating house or restaurant is determined by the estimated sales of the keeper thereof, made as the keeper of that eating house or restaurant. There is no provision in the statute which limits the number of eating houses or restaurants which any one person or corporation may keep, but if any one person or corporation keeps two or more eating houses or restaurants the license tax must be paid for each separate establishment, according to the classification required by the act of 1849.

The judgment is affirmed.